Filed 9/16/24  In re N.G. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re N.G., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B327166 (Super. Ct. No. PJ53919) (Los Angeles County) |
| THE PEOPLE, Plaintiff and Respondent, v. N.G., Defendant and Appellant. | |

N.G. challenges the juvenile court's dispositional order committing him to the Secure Youth Treatment Facility (SYTF) for a baseline confinement term of seven years after finding true

the allegation that he committed second degree murder. (Pen. Code, §§ 187, 189; Welf. & Inst. Code, § 602.)[1]

Appellant contends: (1) the juvenile court abused its discretion and violated his right to confrontation when it prohibited defense counsel from cross-examining a witness about prior uncharged conduct, (2) the matter should be remanded for the juvenile court to reconsider the baseline term in accordance with new law, and (3) this court should conduct an independent review of the confidential files reviewed by the juvenile court following the grant of appellant's *Pitchess* motion to determine whether the juvenile court abused its discretion in deciding what complaints were discoverable.

We remand the case so the juvenile court may exercise its discretion whether to impose a lesser baseline term. In all other respects, we affirm.

*Facts and Procedural Background*

In August 2021, at approximately 11:30 p.m., police officers heard a gunshot near Sepulveda Boulevard and Superior Street. They drove to the location and found a white Toyota Corolla in the middle of the street. The vehicle had a bullet hole in the rear driver's side window. The driver, later identified as C.R., suffered a fatal gunshot wound to the back of his head. Inside the vehicle, officers found cell phones and a plastic bag that contained marijuana. Officers also found a shell casing from a 9-millimeter bullet located approximately 36 feet away from the vehicle.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Surveillance video from the scene showed an individual in a white hoodie approaching the victim's vehicle. As the vehicle began to drive away, there was a visible muzzle flash, the vehicle lurched to a stop, and the individual in the hoodie ran away.

Additional video recovered from an apartment building near the shooting showed a young man running with a gun, hopping a fence, tucking a sweatshirt under a car, and then returning to the car.

When officers searched the car, a Dodge Magnum, they found a white hoodie with a handgun wrapped inside. The gun was loaded with several rounds in the magazine and had an empty cartridge in the chamber that had failed to eject properly. Officers also found a plastic bag that contained marijuana, as well as paperwork indicating the vehicle belonged to appellant's mother.

Appellant was arrested in another state pursuant to a warrant for his arrest.

*Contested Jurisdictional Hearing*

At the contested jurisdictional hearing, the People presented evidence including surveillance video, witness testimony, and other items of evidence indicating appellant was the shooter.

The victim's friend, D.J., testified after he was granted immunity. On the day of the shooting, D.J., C.R., and another friend, Frankie, were hanging out at Frankie's house. They were all drinking alcohol. D.J. recalled he drank three or four beers and had some marijuana. After several hours, they decided to buy more marijuana.

3

C.R. drove, while D.J. sat in the front seat, and another friend, J.P.,[2] sat in the backseat. When they arrived at the location of Superior Street near Sepulveda Boulevard, C.R. stopped his vehicle, and an individual wearing a hoodie approached the driver's side window. D.J. testified that a drug transaction occurred between C.R. and the individual in the hoodie, but D.J. did not hear their conversation.

D.J. heard a gunshot and the vehicle went forward about a foot then stopped. D.J. noticed C.R. was bleeding, not moving, and had a bullet wound to his head. D.J. attempted to reach over C.R. and drive the vehicle but it would not move. Both he and J.P. exited the vehicle and fled the scene.

Angela Bittbauer, a criminalist for the Los Angeles Police Department, analyzed DNA seized from the pistol and the sweatshirt and compared it to a DNA sample from appellant. The DNA from the pistol was deemed unusable but DNA from the sweatshirt matched appellant's DNA.

The parties stipulated, among other things, that the seized semi-automatic pistol fired the casing recovered at the scene, C.R. died from a gunshot wound to the head, and cellular telephone records placed appellant in the area at the time of the murder.

After listening to testimony and considering all of the evidence presented, including testimony from the defense expert on adolescent brain development, the juvenile court sustained the petition.

After a contested disposition hearing, the juvenile court ordered appellant committed to SYTF for a baseline confinement term of seven years. The juvenile court further set appellant's

---

2 J.P. was also granted immunity but he refused to testify.

4

maximum confinement time as life, but with the limitation that the actual confinement time in SYTF not exceed appellant turning 25 years of age.

*Prior Uncharged Conduct*

Appellant contends the juvenile court abused its discretion and violated his right to confrontation when it prohibited him from cross-examining D.J. about his prior uncharged conduct.

The trial court has broad discretion in determining the relevance of evidence. (*People v. Harris* (2005) 37 Cal.4th 310, 337.) "A trial court's decision to admit or exclude evidence is reviewable for abuse of discretion." (*People v. Vieira* (2005) 35 Cal.4th 264, 292.)

Here, the juvenile court did not abuse its discretion in ruling that cross-examination about D.J.'s arrest for carjacking was not relevant, particularly given that D.J. was granted immunity for his testimony. Thus, he had no reason to believe that any unfavorable testimony to the prosecution would result in adverse consequences for him.

Moreover, there was no confrontation clause violation. "Although the right of confrontation includes the right to cross-examine adverse witnesses on matters reflecting on their credibility, 'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination.'" (*People v. Quartermain* (1997) 16 Cal.4th 600, 623 (*Quartermain*), quoting *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679.)

"A trial court's limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a reasonable jury might have received a

significantly different impression of the witness's credibility had the excluded cross-examination been permitted." (*Quartermain*, *supra*, 16 Cal.4th at pp. 623-624; *People v. Williams* (2016) 1 Cal.5th 1166, 1192.)

Here, there was other evidence by which D.J.'s credibility could have been impeached, including his admission to using drugs and his plan to purchase more drugs on the night C.R. was murdered. A reasonable trier of fact would not have received a significantly different impression of D.J.'s credibility had he been cross-examined about his unrelated arrest for carjacking.

Appellant rejects this conclusion and contends that if D.J. were confronted with questions about the carjacking, and especially if he admitted the violent conduct, his credibility would have been "seriously undermined in a way that his admission about consuming drugs did not come close to accomplishing."

Even if we were to conclude that the juvenile court's ruling regarding cross-examination of D.J.'s prior uncharged conduct was error, the error is harmless under any standard in view of the overwhelming evidence of appellant's guilt in this case. (See *Chapman v. California* (1967) 386 U.S. 18; *People v. Watson* (1956) 46 Cal.2d 818.)

*Baseline Term of Confinement*

Appellant next contends the matter should be remanded to permit the juvenile court to exercise its discretion to impose a lesser baseline term in light of California Rules of Court, rule 5.806(d), which became effective after the dispositional hearing. The People agree.

Effective July 1, 2023, the baseline confinement term for second degree murder was modified from seven years to a range of four to seven years. (See Cal. Rules of Court, rule 5.806(d)

[setting forth offense-based classification matrix].)  However, at the time of the dispositional hearing in June 2023, the Judicial Council had not yet adopted a matrix of offense-based classifications.  Thus, in accordance with the applicable guidelines in place at the time, the juvenile court ordered appellant committed to a baseline confinement term of seven years.  (See § 875, subds. (b)(1), (h)(1); Cal. Code Regs., tit. 9, § 30807.)

Because appellant's judgment was not yet final as of July 2023, and rule 5.806 grants trial courts discretion to possibly ameliorate punishment, he is entitled to have the juvenile court reconsider his baseline term.  (Cal Rules of Court, rule 5.806(d); *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299.)

### *Pitchess Motion*[3]

Prior to trial, defense counsel filed a motion for "Discovery of Brady Information" in the personnel records of five Los Angeles police officers involved in the investigation.  The juvenile court granted a portion of the motion.  After conducting an in camera review of the files, the juvenile court ordered discovery but did not specify on the record what discovery was ordered.

Appellant asks us to independently review the confidential files reviewed by the trial court following the grant of his *Pitchess* motion to determine whether the juvenile court abused its discretion in deciding what complaints were discoverable.  The People agree that we need only review the juvenile courts in camera transcripts to determine whether the juvenile court properly exercised its discretion.

The sealed record at issue here includes a full transcript of the in camera hearing, but not the actual personnel files that

---

[3] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

formed the basis of the juvenile court's ruling. Our Supreme Court has determined that, in the context of a *Pitchess* motion, meaningful appellate review can be accomplished by examining the sealed transcript of the trial court's in camera review proceedings to determine if the trial court adequately fulfilled its function. (*People v. Myles* (2012) 53 Cal.4th 1181, 1209; *People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1229.)

Based on our review of the sealed transcript, we conclude the juvenile court followed proper *Pitchess* procedures and did not erroneously withhold any information.

*Disposition*

The matter is remanded for the limited purpose of allowing the juvenile court to reconsider appellant's baseline confinement term pursuant to California Rules of Court, rule 5.806(d). In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.



YEGAN, Acting P. J.

We concur:


BALTODANO, J.


CODY, J.

Susan Ser, Judge
Superior Court County of Los Angeles
_____

Elana Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Ryan M. Smith, Deputy Attorney General, for Plaintiff and Respondent.